IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

OMAR N. DAVIS,

           Petitioner,

    v.

STEPHEN D'ILIO, et al.,

           Respondents.

HONORABLE ANNE E. THOMPSON

Civil Action
No. 14-7797 (AET)

**OPINION**

**THOMPSON, District Judge:**

## I. INTRODUCTION

Omar N. Davis has submitted an amended petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254. Amended Petition,
Docket Entry 3. Respondent Stephen D'Ilio opposes the petition.
Answer, Docket Entry 20. For the reasons stated herein, the
petition shall be denied as to all grounds. A limited
certificate of appealability shall issue.

## II. BACKGROUND

This Court reproduces the recitation of the facts as set
forth by the New Jersey Superior Court Appellate Division in its
opinion denying Petitioner's Direct Appeal:

> At around 3:00 a.m. on April 8, 2000, the Egg Harbor
> Township Police responded to a 911 call on Gravesmith
> Street. The 911 caller reported to police that he had
> looked out his window after hearing people talking
> outside. He heard noises that he thought were gunshots,
> and went outside and heard a man saying "[p]lease, no.

I can't take much more of this." He then heard a gunshot coming from across the street.

The police responded and found a body by the passenger side of an Oldsmobile Cutlass Supreme in a residential driveway. The property belonged to defendant's parents. The victim was still alive when the officers arrived, but died soon thereafter.

The investigation revealed that the victim was originally shot while inside the car. A "drag mark" was found, indicating that the body was brought around the back of the vehicle to the passenger side where he was shot in the head. There were also two entrance wounds on the victim's right lower back, one of which matched up with a grazing wound on the right arm, a wound on the right chest, which also grazed the right arm, and a large wound to the left hand.

All wounds to the victim were caused by a shotgun found by the hitch of a camper located on the property. It is undisputed that defendant used the camper to watch television and smoke marijuana. Defendant's parents denied ownership of the shotgun, but there was evidence that at some point in the past a member of the family had owned a shotgun.

Following *Miranda*[1] warnings, defendant was interviewed by the police. He was interviewed a second time because of contradictions between his statements and statements by other individuals. Defendant was thereafter arrested for murder. At neither of these interviews did defendant confess to the murder. But, following his arrest and during the transport to the county jail, defendant volunteered: "I'm twenty-three and I'm never going to see this again" and "I fucked up."

*State v. Davis*, No. A-0058-03, 2006 WL 1000050, at *1-2 (N.J. Super. Ct. App. Div. Apr. 18, 2006) ("*Davis I*") (alteration in original). In June 2000, an Atlantic County grand jury indicted Petitioner with first-degree murder, N.J. STAT. ANN. § 2C:11-

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3a(1)(2) (Count One) and second-degree possession of a weapon

for an unlawful purpose, N.J. STAT. ANN. § 2C:39-4(d) (Count Two).

Answer at 2. Petitioner's first trial resulted in a mistrial in

September 2002. *Id.* at 3; 2T152:15 to 167:7.[2]

The State presented several witnesses who testified as to

Petitioner's incriminating statements:

> Defendant's cousin, Jackie Davis, testified that shortly
> before the murder, defendant arrived at his house. He
> was nervous and asked for marijuana. He left, but then
> returned around 3:30 a.m. Looking upset, he said he did
> something that he regretted, saying "I 'murked' him. I
> shot him." Davis testified that when he asked what
> defendant was talking about, defendant replied that he
> had "killed somebody" with a shotgun and that he did so
> because the victim had taken money from him and had also
> taken a radio.

---

[2] "R" refers to the exhibits submitted with Respondent's Answer,
Docket Entry 10.

1T – Transcript of grand jury presentment, dated June 28, 2000.
2T – Transcript of first trial, dated September 26, 2002.
3T – Transcript of pre-trial hearing, dated February 3, 2003.
4T – Transcript of second trial, dated February 4, 2003.
5T – Transcript of second trial, dated February 5, 2003.
6T – Transcript of second trial, dated February 6, 2003 (AM).
7T – Transcript of second trial, dated February 6, 2003 (PM).
8T – Transcript of second trial, dated February 10, 2003.
9T – Transcript of second trial, dated February 11, 2003.
10T – Transcript of second trial, dated February 13, 2003.
11T – Transcript of second trial, dated February 19, 2003.
12T – Transcript of second trial, dated February 20, 2003 (Vol. 1).
13T – Transcript of second trial, dated February 20, 2003 (Vol. 2).
14T – Transcript of second trial, dated February 24, 2003.
15T – Transcript of second trial, dated February 25, 2003.
16T – Transcript of second trial, dated February 26, 2003 (not submitted).
17T – Transcript of sentencing, dated March 28, 2003.
18T – Transcript of post-conviction relief ("PCR") hearing, dated October 22, 2012.

Donna Lyons, Davis's girlfriend, testified that when she returned home from work at approximately 9:00 a.m. that morning, defendant was there and told her: "I messed up" and that "the guy was chumping him" which means "treating him like a punk...." Calief Lyons, Donna's son, also testified that he had spoken with defendant who told him, "whatever he did he had to do...." Two other individuals who had gone to Davis's house to buy drugs heard defendant say that he "smoked" the victim and that "[h]is head was shot off."

Additionally, Juanita Tutis, a bartender at a nearby bar, testified that she saw both defendant and the victim in the bar at approximately 2:30 a.m. on the morning of the murder conversing for about ten minutes. Then the victim left and defendant went upstairs. However, in her statement made to the police a few days after the murder, Tutis stated that the two left the bar together. She also related that sometime prior to the murder, the victim had taken defendant's radio which he had left in the bar.

*Davis I*, 2006 WL 1000050, at *2 (alterations and omissions in

original). Petitioner elected to testify on his own behalf:

He stated that he was at the bar for most of the night until it closed, leaving it briefly to go to a party. During the night he had a brief conversation with the victim and did not thereafter see him. After seeing multiple police cars driving toward his parents' neighborhood, and because he had outstanding warrants and was in possession of marijuana, he caught a bus to Atlantic City where he stayed for approximately five hours. Upon returning at approximately 10:00 a.m., and discovering that the victim had been shot on his parents' property, he went to his cousin Jackie Davis's house and bought some marijuana from him. It was defendant's theory that his cousin testified against him to get back at him for having a sexual relationship with Donna Lyons. He denied volunteering any statements to the police while being transported to the county jail following his arrest.

*Id.*

4

A jury ultimately convicted Petitioner on both counts in February 2003. Answer at 3; R19 at Da5-Da6. Petitioner was sentenced to a term of life imprisonment with a 30-year period of parole ineligibility on Count One, and a concurrent 10 year sentence on count 2. Answer at 3.

Petitioner appealed. Petitioner filed a pro se brief in support of his appeal, and appellate counsel filed a formal brief. Pro Se Appellate Brief, R20; Appellate Brief, R19. The State responded. State's Appellate Brief, R21. On April 19, 2006, the Appellate Division denied the appeal. *Davis I*, 2006 WL 1000050; *see also* R22. The New Jersey Supreme Court denied certification. *State v. Davis*, 907 A.2d 1013 (N.J. 2006).

Petitioner filed a timely post-conviction relief ("PCR") petition on February 9, 2007. R24. PCR counsel submitted a formal brief. R25. The PCR court conducted oral arguments on the merits, and denied the petition without ordering an evidentiary hearing. 18T. The Appellate Division affirmed the order of the PCR Court. *State v. Davis*, No. A-1511-12, 2013 WL 5729968 (N.J. Super. Ct. App. Div. Oct. 23, 2013)("*Davis II*"). The New Jersey Supreme Court denied certification on September 9, 2014. R35; *State v. Davis*, 99 A.3d 831 (N.J. 2014).

Petitioner submitted a § 2254 petition on December 9, 2014. Petition, Docket Entry 1. The Court administratively terminated the petition on March 5, 2015, and Petitioner submitted his

5

amended petition on April 29, 2015. Amended Petition, Docket Entry 3. The Court notified him of his rights and responsibilities under *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and instructed Petitioner to inform the Court how he wanted to proceed within 45 days. *Mason* Notice, Docket Entry 5. As Petitioner did not respond to the Court within the 45-day period, the Court reviewed the amended petition as filed and ordered Respondent to answer. Docket Entry 6. Respondent filed its answer on July 11, 2016. Answer, Docket Entry 10. Petitioner filed his traverse on October 11, 2016. Traverse, Docket Entry 13.

## III. **STANDARD OF REVIEW**

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706, reh'g denied, 134 S. Ct. 2835 (2014). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**IV. ANALYSIS**

Petitioner raises ten grounds for relief:

I.    The Prosecutor's Improper Comments in His Opening and Summation Violated the Petitioner's Right to a Fair Trial.

7

II.   The Admission of Testimony About The Petitioner's House Having been Raided for Drugs in the Past Created a Degree of Prejudice not Curable by the Court's Limiting Instructions.

III.  Trial Counsel's Failure to Investigate Whether a Psychologist or Psychiatrist Would have Offered an Opinion of Petitioner's Legal Insanity Served to Deny Petitioner of Effective Assistance of Counsel.

IV.   Trial Counsel was Ineffective in Her Assistance Through Her Failure to Thoroughly Pursue and Present a Passion/Provocation Defense.

V.    Trial Counsel was Ineffective for Failing to Object to the Trial Court's "Flight" Charge Which was Incorrect and Not Supported by Any Evidence, Thereby Denying Petitioner His Due Process of Law and a Fair Trial.

VI.   The Petitioner was Never Advised of the Sentence He was Facing, If He went to Trial, which Violated His Due Process.

VII.  Petitioner [was] Denied Effective Assistance of Counsel when Trial Counsel Failed to Object to the Admission of Evidence Obtained in Violation of the Petitioner's Fifth Amendment Right to Remain Silent.

VIII. The State Purposely Created the Initial Mistrial Because the State Knew the Content of Detective Hires' Improper Testimony Before Same Improper Testimony Was Elicited, Which Violated the Petitioner's Right to a Fair Trial and His Rights to Due Process under the 14th Amendment of the U.S. Constitution.

IX.   Petitioner's Right to Confront and Cross-Examine His Accuser was Violated when Detective Hires was Medically Excused from testifying at the Petitioner's Second Trial and His Absence was not Supported by Medical Documentation and Trial Counsel was Ineffective for Allowing to [sic] His Previous Testimony read into the Record.

X.    Appellate Counsel Was Ineffective.

8

Petition, Attachment page 2-17, Docket Entry 1.[3]

## A.    Prosecutorial Misconduct

In Ground One, Petitioner asserts that the prosecutor's improper comments in the opening and summation deprived him of a fair trial.

The prosecutor informed the jury in his opening statement that no forensic evidence recovered from the scene would directly tie Petitioner to the murder:

> You'll hear about some evidence connecting the defendant and his family to that gun. And you're also going to hear from some experts from the State Police lab and the DNA expert from a private lab, *but I just want you to forget-maybe what you heard on t.v. and all about fingerprints evidence and things like that because you're not going to be hearing that. You're not going to be hearing that the defendant's fingerprints were all over everything, the gun and the car because you're going to hear that that's really a rarity in cases that you do have that at a crime scene, and you're going to be hearing from a fingerprint expert who will tell you that. So, you know don't be looking for all kinds of prints over everything because we're just not going to have it. And don't be longing for well, his fingerprints were on the clothes, all these bloody clothes the defendant had on and the victims blood would be on those clothes because you're not going to have that either.* And you're going to hear testimony about that, and bear in mind also that any clothes that defendant did turn over to police wasn't done for almost two days until after the homicide. Because as I said, the homicide took place in the early morning hours of Saturday about ten-of-three.

---

[3] Petitioner's Amended Petition directs the reader to "see attached" for each ground raised, however, no attachment was submitted with the amended petition. The Court uses the grounds attached to the Original Petition, which are repeated in his Traverse, as the grounds of Petitioner's claims.

> And the first time the police have any contact with the
> defendant is Sunday night.

*Davis I*, 2006 WL 1000050, at *3 (emphasis in original). In his

closing statement, the prosecutor argued: "'You'll find him

guilty of murder because the facts support it, and justice

demands it, and it's a verdict you won't regret.'" *Id.*

Petitioner did not object to the remarks at the time.

"[A] prosecutor's improper comments will be held to violate

the Constitution only if they 'so infected the trial with

unfairness as to make the resulting conviction a denial of due

process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974)). "[I]t is not enough

that the prosecutors' remarks were undesirable or even

universally condemned." *Darden*, 477 U.S. at 181 (internal

quotation marks omitted). "Supreme Court precedent requires the

reviewing court to weigh the prosecutor's conduct, the effect of

the curative instructions and the strength of the evidence."

*Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

The Appellate Division's decision did not reach a decision

contrary to established Supreme Court precedent when it

concluded the prosecutor's comments did not deprive Petitioner

of a fair trial, nor was it unreasonable in light of the facts.

The comments made in the opening statement "merely pointed out

to the jury what evidence it would hear and what evidence it would not hear and that the evidence it would hear would establish defendant's guilt." *Davis I*, 2006 WL 1000050, at *4. They "did not manipulate or misstate the evidence, nor did [they] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden*, 477 U.S. at 182.

The Appellate Division reasonably concluded that Petitioner's fair trial rights were not violated even though the prosecutor should not have made the challenged remarks in his closing argument. *See Moore*, 255 F.3d at 117 (noting "appeals for jurors to decide cases based on passion and emotion were improper"). The statements that "justice demands" a guilty verdict and the jurors "wouldn't regret" convicting do not rise to the level of prejudice found in *Moore*, where the prosecutor made racial and ethnically based comments as well as an assertion that an acquittal would "perpetuate[] a worse assault" on the sexual assault victim. *See id.* at 116-17. As noted by the Appellate Division, "defendant's own admissions fairly well tied him to the murder." *Davis I*, 2006 WL 1000050, at *5. Multiple witnesses also testified that Petitioner admitted he killed the victim. Petitioner did not object to the remarks at trial so there were no specific curative instructions, but the jury was instructed "summations were not to be considered as evidence."

*Id.* In the context of the trial as a whole, the comments in the opening and closing statements did not deprive Petitioner of a fair trial.

As the Appellate Division's decision was not contrary to established Supreme Court precedent, nor is it unreasonable in light of the facts adduced at trial, Petitioner is not entitled to habeas relief on this basis.

## B. Prior Bad Acts Evidence

In Ground Two, Petitioner alleges that a testifying detective's reference to Petitioner's home being previously raided for a drug investigation was inadmissible and unduly prejudicial under New Jersey Rule of Evidence 404(b).

The complained of testimony took place during the cross-examination of Officer Madeline Barefield. Trial counsel questioned the officer about her interview of Petitioner's mother, asking: "So she told you she had a bunch of guns?" 6T108:8. Officer Barefield responded: "She-there were other weapons that belonged to one [of] the other sons. She said the house was raided by the police for drugs, and they seized whatever handguns they had there." 6T108:9-12. Defense counsel moved for a mistrial, which the court denied. The trial court instructed the jury to disregard the remark at the conclusion of the sidebar, 6T114:1-2, and again after a short recess, 6T120:20-25.

12

"Admissibility of evidence is a state law issue." *Wilson v. Vaught*, 533 F.3d 208, 213 (3d Cir. 2008). This Court cannot grant habeas relief for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Petitioner did not argue before the state courts, nor does he argue here, that his federal due process rights were violated by this testimony. *See, e.g.,* Traverse at 10 (citing *State v. Cofield*, 605 A.2d 230 (N.J. 1992)). As the only claim raised on this ground is a violation of a state evidentiary rule, Petitioner is not entitled to federal habeas relief.

## C. Ineffective Assistance of Counsel

Grounds Three through Five of Petitioner's claims are allegations of ineffective assistance of trial counsels governed by the *Strickland* standard. Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

13

Furthermore, "[w]hen a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

     1.    *Whether trial counsel was ineffective for failing to thoroughly pursue and present a voluntary intoxication defense (Ground Three)*

Petitioner asserts his trial counsel was ineffective for failure to explore a voluntary intoxication defense in light of the alcohol and marijuana he consumed on the night of the murder.

Under New Jersey State law, a voluntary intoxication defense is only viable if it "negates an element of the offense." N.J. STAT. ANN. § 2C:2-8a. The PCR Court concluded Petitioner had not shown trial counsel acted unreasonably as Petitioner "testified under oath that he was not [under the influence of drugs or alcohol]. [There is] [n]othing to suggest that his faculties were prostrated to the point where he could not form the mental states required for conviction of a charge

14

of murder." 18T51:10-14. The Appellate Division agreed,

concluding   "Defendant's asserted defense at trial, that he did

not shoot the victim, makes intoxication . . . irrelevant."

*Davis II*, 2013 WL 5729968, at \*3.

Applying the appropriate standard of deference to the state

court's decision, the Court cannot say the Appellate Division

unreasonably applied *Strickland*. The record indicates trial

counsel considered an intoxication defense in connection with

pursuing the lesser included offense of manslaughter. The trial

court questioned the applicability of an intoxication defense,

noting Petitioner "described in great detail thus far his

activities, the rationale of his thinking and his conduct is

palpable based on his account of what he did, didn't do and so

forth." 14T11:21-24. After conferring with trial counsel,

Petitioner "specifically requested" trial counsel not to pursue

"the lesser included offense of aggravated manslaughter

specifically with the intoxication or diminished capacity . . .

if it was marijuana rather than alcohol, a defense he has asked

[her] not to seek . . . ." 14T94:16-21. Petitioner offered

nothing to the PCR court that would suggest it was unreasonable

for trial counsel not to have him evaluated by an expert in

light of Petitioner's keen memory of the night in question, or

that there was an reasonable likelihood expert testimony would

have changed the result of the proceeding.

In light of the record below, the Appellate Division reasonably concluded Petitioner had not met the *Strickland* standard of ineffective assistance. He is therefore not entitled to relief on this ground.

*2. Whether counsel was ineffective for failure to request a passion/provocation charge (Ground Four)*

Petitioner additionally argues that counsel was ineffective for failing to pursue a passion/provocation defense to murder, asserting that being beaten and robbed by the victim warranted the charge.

"Passion/provocation manslaughter, defined as '[a] homicide which would otherwise be murder ... [but] is committed in the heat of passion resulting from a reasonable provocation,' is a well-established lesser-included offense of murder." *State v. Carrero*, 159 A.3d 1284, 1290 (N.J. 2017) (quoting N.J. STAT. ANN. § 2C:11-b(4)(2)) (alterations in original). Under New Jersey law, the trial judge may "not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J. STAT. ANN. § 2C:1-8(e).

The Appellate Division concluded a passion/provocation instruction would not have been warranted under New Jersey law because Petitioner's defense at trial was that he did not shoot the victim at all. Deferring to the state court's interpretation

of state law and in light of the evidence presented at trial, the Court concludes the Appellate Division reasonably applied *Strickland* in denying Petitioner's claim. An attorney cannot be ineffective for failing to request a charge to which the defendant was not entitled. *See Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 372 (3d Cir. 2010). Accordingly, Ground Four of the Petition is denied.

*3. Whether counsel was ineffective for failure to object to the State's request for a "Flight Charge" (Ground Five)*

In Ground Five, Petitioner asserts trial counsel was ineffective for failing to object to the flight jury instruction. The PCR Court did not address this argument, and the Appellate Division found the claim to be "without sufficient merit to require discussion in a written opinion." *Davis II*, 2013 WL 5729968 at *3. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Just prior to the conclusion of Petitioner's testimony, the trial court stated "[i]t also occurs to me that given the defendant's statement and his testimony that flight would be an appropriate charge. Any objection exception [sic] to that?" 14T7:4-7. Trial counsel consented to the charge after the court

17

read the model charge to her and Petitioner, and she informed the court as to the alternative explanation she wanted to present to the jury. 14T10:7-21. The jury was ultimately instructed as follows:

There has been some testimony in this case from which you may infer that the defendant fled the area shortly after the alleged commission of the crime. The defense has suggested the following explanation: That the defendant was aware of the existence of outstanding municipal court bench warrants, and also that he was aware of his possession of marijuana and was trying to avoid police contact for those reasons. If you find the defendant's explanation credible, you should not draw any inference of defendant's consciousness of guilt from the defendant's departure. If after a consideration of all of the evidence you find that the defendant fearing that an accusation or arrest would be made against him for the charge involved in the indictment took refuge in flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all other evidence in this case as an indication or proof of consciousness of guilt on the defendant's part. It is for you as judges of the facts to decide whether or not evidence of flight shows a consciousness of guilt and weight to be given such evidence in light of all the other evidence in the case.

15T:28-4 to 29-1.

The Court finds that Petitioner has not met his burden of proving that the Appellate Division had no reasonable basis to deny him relief on this ground. By his own admission, Petitioner "fled the area" after he saw police cars headed towards his parents' home because he was carrying marijuana and believed there were warrants out for his arrest. 13T78:13; 77:77-21. He testified he "caught a bus over to Atlantic City." 13T78:24.

18

This was enough to support a flight charge; thus, there was no error in the failure to object. As trial counsel did not err, the Appellate Division had a reasonable basis to conclude Petitioner's ineffective assistance claim was without merit. Petitioner is not entitled to relief on this ground.

*4. Whether trial counsel was ineffective for failing to object to the admission of Petitioner's statement to police (Ground Seven)*

Petitioner asserts in Ground Seven[4] that he was denied effective assistance of trial counsel when counsel failed to object to the admission of his statement to police allegedly obtained in violation of his Fifth Amendment right to remain silent. Ground Seven was raised in Petitioner's PCR petition, but was abandoned on appeal after the PCR court denied the petition. As Petitioner failed to exhaust this claim in the state courts, it is now procedurally barred. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(failure to present federal habeas claims to state supreme court in a timely fashion resulted in a procedural default); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). *See also Sklodowsky v. Lushis*, 11 A.3d 420, 426 (N.J. Super. Ct. App. Div. 2011) ("An issue not briefed on appeal is deemed waived."); *accord L. H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213, 218, (3d Cir. 2016) ("Very simply,

---

[4] Ground Six is discussed *infra* Part IV.F.

the failure to raise an issue in an opening brief waives the issue on appeal."). This Court may not consider Ground Seven's merits unless "the petitioner 'establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.'" *Lines*, 208 F.3d at 160 (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)).

Petitioner has not submitted anything to this Court that would constitute cause for failing to present this issue on appeal, nor has he argued that a miscarriage of justice would occur if this Court did not review the merits. *See* Traverse at 19 (citing arguments made to PCR court). As Petitioner has not established either cause and prejudice or a fundamental miscarriage of justice to excuse the default, the Court cannot consider the merits. *See McCandless v. Vaughn*, 172 F.3d 255, 263 (3d Cir. 1999) (noting court was not free to consider merits of procedurally defaulted arguments when petitioner did not argue cause and prejudice or miscarriage of justice exceptions).

Ground Seven is procedurally defaulted.

## D. Procedurally Defaulted Claims

The Court finds that Petitioner has also procedurally defaulted on Grounds Eight and Nine.

This type of procedural default "occurs when a state court determines that 'the prisoner . . . failed to meet a state procedural requirement.'" *Collins v. Sec'y of Pa. Dep't of*

20

*Corr.*, 742 F.3d 528, 540 (3d Cir. 2014) (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)). If the state court decision "involving a federal question . . . is based on a rule of state law that is independent of the federal question and adequate to support the judgment[,]" *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)), federal courts may not review the merits of the claim unless "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (quoting *Lines*, 208 F.3d at 159-60).

The Appellate Division held Grounds Eight and Nine should have been raised on direct appeal. *Davis II*, 2013 WL 5729968 at *3.[5] *See also* N.J. Ct. R. 3:22-4(a)(1) ("Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from

---

[5] The Appellate Division incorrectly noted Grounds Eight and Nine, to the extent it challenges the admission of Detective Hires' testimony, were not raised before the PCR court as Petitioner raised these claims in his brief dated August 13, 2012. R25. However, the procedural default stands because the Appellate Division concluded the "more important[]" reason to bar the claims was that "these arguments should have been raised on direct appeal and thus cannot be raised in a PCR petition." *Davis II*, 2013 WL 5729968 at *3 (citing N.J. Ct. R.3:22-4(a)(1)). Petitioner did fail to raise Ground Nine in the PCR court to the extent that it argues trial counsel was ineffective for failing to object to the admission of Detective Hires' testimony.

assertion in a proceeding under this rule unless the court . . . finds that the ground for relief not previously asserted could not reasonable have been raised in any prior proceeding"). Thus, "the last state court rendering a judgment in the case 'clearly and expressly' state[d] that its judgment rest[ed] on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Rule 3:22-4 has been recognized as a firmly established, regularly followed independent state ground precluding federal habeas review. *See, e.g., Cabrera v. Barbo*, 175 F.3d 307 (3d Cir. 1999).

The Court construes the petition as arguing that appellate counsel's failure to raise these claims on appeal excuses the default. "[C]ounsel's ineffectiveness in failing properly to preserve the claim for review in state court" may serve as cause excusing a procedural default only in situations in which appellate counsel's actions were "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id.* (emphasis in original).

However, appellate counsel's alleged ineffective assistance may only be used to excuse the procedural default of the other

22

claims if Petitioner properly exhausted that separate, independent ineffective assistance of *appellate* counsel claim in the state courts. *Id.* at 451-52 (citing 28 U.S.C. § 2254(b)-(c); *Carrier*, 477 U.S. at 489). Petitioner did not argue before the PCR court that appellate counsel was ineffective for failing to raise Grounds Eight and Nine on direct appeal. *See* Re24; Re25. Petitioner therefore cannot use ineffective assistance of appellate counsel as the "cause" of his procedural default. Petitioner makes no argument regarding miscarriage of justice, and nothing in the record indicates one would occur in the event the Court fails to review the merits of these claims. Grounds Eight and Nine are dismissed as procedurally defaulted.

## E. Ineffective Appellate Attorney

Petitioner asserts in Ground Ten that his appellate attorney was ineffective. Petitioner contents that "the claims argued supra have substantial merit" and "Appellate counsel therefore could have had no sound strategic reason to not present these claims on petitioner's direct appeal." Traverse at 21. Petitioner does not distinguish to which claims he is referring. The Court notes that of the nine other claims presented in petitioner's habeas corpus petition, five were brought on direct appeal and the four remaining claims were presented on PCR. This Court will assume that Petitioner is referring to Grounds Eight and Nine in this petition, which when

23

presented to the PCR Court were found to be procedurally barred by the Appellate Division.[6]

As previously noted, Petitioner did not properly exhaust his ineffective assistance of appellate counsel claim in state court. Although he briefly mentioned an unidentified claim that appellate counsel purportedly did not raise on direct appeal in his Notice of Petition, R24 at 1, Petitioner did not set forth the factual or legal substance of his claim. *See McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir. 1999) ("To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."). He also did not argue before the Appellate Division that appellate counsel was ineffective after the PCR court denied the petition. *See* PCR Appellate Brief, R27. Even though this claim is unexhausted, the Court will deny it on the merits. 28 U.S.C. § 2254(b)(2).

Petitioner's assertion that the State purposely created the mistrial, and appellate counsel was therefore ineffective for

---

[6] In Petitioner's Original Petition, he noted that Grounds Eight and Nine were not brought on direct appeal because "Appellate Counsel failed to raise it." Petition at 15-16. However, in Petitioner's Amended Petition, in the same section, Petitioner wrote "N/A" as to why Grounds Eight and Nine were not brought on direct appeal. Amended Petition at 12-13. Petitioner's Traverse offers little guidance as to why Petitioner makes the blanket statement that his appellate attorney was ineffective for failing to bring claims on direct appeal without indicating which claims he is referring. Traverse at 21.

raising the issue on appeal, is contradicted by the record. The improper testimony occurred during cross-examination when Detective Hires stated he compared impressions made by Petitioner's boots with impressions made by another pair of boots that were in police custody. 2T130:11-24. The prosecutor indicated he was unaware of any alleged comparison and candidly informed the court such a comparison would not have been possible in any event. 2T163:4-6. Trial counsel requested the mistrial, 2T158:23, and the State objected to that request, 2T165:3-8, 167:3-5.[7] There is no factual support in the record that the State purposefully created the mistrial; therefore, Petitioner has not carried his burden of showing appellate counsel erred by failing to raise it on direct appeal. "Counsel cannot be deemed ineffective for failing to raise a meritless claim." *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

Furthermore, Petitioner's claim that his right to confront his accuser was violated when Detective Hires was medically excused from testifying is also not supported by the record. At the time of Petitioner's first trial, established federal law permitted the "admission of non-testifying declarants' out of

---

[7] At a hearing before Petitioner's second trial, the trial court noted the prosecutor "vigorously" resisted the mistrial and had a strong reaction to the declaration, convincing the court that the state did not intend to create a mistrial. 3T17:1-5.

court statements where the prosecution establishes that (i) the declarant is 'unavailable' and (ii) the statement bears adequate 'indicia of reliability.'" *McCandless*, 172 F.3d at 264-65 (quoting *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980), *abrogated by Crawford v. Washington*, 541 U.S. 36 (2004)).[8] Petitioner argues only that the trial court incorrectly determined Detective Hires was unavailable to testify.

The record reflects that the trial court, along with defense counsel and prosecutor, conducted a detailed hearing with Detective Hires prior to the start of Petitioner's second trial regarding his availability to testify. 5T3:2 to 17:25. Detective Hires supplemented his testimony with a letter from his physician explaining Detective Hires' medical condition, medications, and why the condition made Detective Hires unable to testify. 10T81:5-12. Trial counsel raised an objection to Detective Hires being declared medically unavailable. *See* 10T81:19 to 84:18.

---

[8] Although not argued by Petitioner, his claim would fail on the second point as well as the testimony entered into evidence at the second trial was from Detective Hires' testimony during the first trial when he was under oath and subject to cross-examination. *McCandless*, 172 F.3d at 265 ("[T]o satisfy the 'indicia of reliability' requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant . . . .").

The trial court found Detective Hires to be medically excused from testifying, basing its decision on Detective Hires' demeanor during his testimony and letter from the physician which stated that Detective Hires was "suffering from an emotional, psychiatric condition . . . from which he will suffer as to the duration of his condition." 10T90:22-24. *See also* N.J.R.E. 804(a)(4).

Deferring to the factual findings of the trial court regarding Detective Hires' demeanor while testing, the Court finds no constitutional error in the decision to excuse Detective Hires from Petitioner's second trial. Detective Hires provided objective medical evidence for his claim that he was too ill to testify in the form of a letter from his treating physician. *See Finizie v. Principi*, 69 F. App'x 571, 573 (3d Cir. 2003). There is no federal requirement for a specific form of clinical documentation. *See id.* Having found no error by the trial court in declaring Detective Hires to be unavailable to testify, there is not a reasonable probability that the appeal would have turned out differently had appellate counsel raised the issue on direct appeal. Petitioner has not carried his burden on this ground, and the Court denies habeas relief on this basis.

**F. Awareness of Maximum Sentencing Exposure**

Petitioner's final claim, Ground Six, alleges trial counsel was ineffective for failing to inform him of his maximum sentence exposure if he proceeded to trial.[9] He asserts that had he known the sentence he was facing, he would have accepted a plea agreement with the State. The Court will deny relief on this basis but will issue a certificate of appealability.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Clearly established federal law at the time of Petitioner's trials held that in the context of ineffective assistance claims arising out of plea negotiations, *Strickland*'s prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The relevant question specific to Petitioner's claim is whether but for trial counsel's ineffective performance, there is a reasonable probability the trial court and Petitioner would

---

[9] Petitioner's traverse mentions trial counsel also may have neglected to inform him of a plea offer. The Court will not construe this as a separate ineffective assistance of counsel claim because it was not raised in the original or amended petition. Petitioner was notified in this Court's *Mason* notice that all claims must be presented in the petition or would be deemed waived.

have accepted the plea, and that the sentence would have been less severe than the life sentence imposed after trial.

Petitioner submitted a sworn statement to the PCR court that trial counsel had never informed him that he was facing a life sentence if he went to trial. R29 at 76. No pre-trial memorandum or transcript of a pre-trial conference wherein Petitioner was informed of the maximum sentencing exposure was submitted to the PCR court. Petitioner argued he could not obtain an affidavit from his trial counsel as she was now a sitting judge in Pennsylvania. The PCR Court expressed disbelief that anyone "would have wanted to engage in a trial of this difficult after a mistrial . . . that there was no effort to settle the case, that there was no offer made and that he didn't know that he stood to face life in prison if here were convicted? I meant that really – I mean that's almost akin to saying prove the sun didn't rise yesterday." 18T17:16-23. Ultimately, the PCR court denied relief after determining that Petitioner had not met *Strickland*'s prejudice prong because he maintained his innocence:

And in face of the protestations of innocence, every reason to believe he would still go forward with his trial. There is not a scintilla of evidence in this case to suggest that there was any desire to pursue a guilty plea. There's everything contrary to that. His testimony at trial, his testimony at time of sentencing and his position con— presumably continues today that he's innocent of this. So how can we say there is reasonable probability that but for counsel telling him that he

29

faced a life sentence, that there would have been a
different result, when we have nothing to reasonably,
reasonably compare it to.

18T54:15 to 55:11.

On appeal, the parties were able to locate a transcript of

a pre-trial conference dated November 7, 2001. Ra 33 at 11. The

prosecutor indicated during that conference that "[t]he State

has made a proffered – a tentative offer in this case which was

discussed with counsel, and my understanding is that there

really isn't a meeting of the minds close to resolving along the

terms proposed by the State." *Id.* at 12. There is no indication

what the offer was or whether Petitioner was present at this

hearing. There is no mention of the maximum sentencing exposure

should Petitioner proceed to trial. The Appellate Division

concluded this transcript indicated Petitioner was "likely"

aware of the plea offer. *Davis II*, 2013 WL 5729968 at *2 n.1.

Like the PCR court, the Appellate Division found that "defendant

maintained his innocence throughout the trial and sentencing and

cannot now argue he would have taken a favorable plea." *Id.* at

*3.

This Court must apply AEDPA deference to the state court's

decision unless it was contrary to or an unreasonable

application of *Strickland*. *Branch v. Sweeney*, 758 F.3d 226, 233

(3d Cir. 2014). The Appellate Division correctly identified

*Strickland* as the governing standard and concluded Petitioner

could not meet the prejudice requirement.[10] The decision was therefore not contrary to *Strickland*.

The state court relied on a New Jersey Supreme Court case holding a defendant was "'legally disabled from taking a plea offer'" because he testified at a PCR hearing he was innocent but would have lied under oath in order to plead guilty. *Davis II*, 2013 WL 5729968 at *2 (quoting *State v. Taccetta*, 975 A.2d 928, 935 (N.J. 2009)). Similarly, Petitioner testified under oath at trial that he had no involvement whatsoever in the shooting. A reasonable inference from that fact is that Petitioner would have had to commit perjury in order to plead guilty to any plea offer. The Appellate Division concluded Petitioner could not argue that he would have accepted a favorable plea deal as a matter of New Jersey law. The Court "cannot review this determination of state law by a state court . . . Thus it was not unreasonable to conclude that [Petitioner] failed to show prejudice if counsel's deficient performance merely deprived him of the opportunity to do something that

---

[10] In reciting the *Strickland* standard the state court mistakenly stated "[t]he second component is shown by establishing a reasonable probability that the defendant would not have *pled guilty*, but for his counsel's errors." *Davis II*, 2013 WL 5729968, at *2 (emphasis added). Petitioner, of course, did not plead guilty. However, the finding that Petitioner was barred under state law from arguing he would have taken the plea indicates the court ultimately applied the correct prejudice standard.

would have been legally prohibited." *Taccetta v. Adm'r N.J. State Prison*, 601 F. App'x 165, 168 (3d Cir.), *cert. denied sub nom. Taccetta v. D'Ilio*, 136 S. Ct. 187 (2015).

"The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 11 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "Because the *Strickland* standard is an especially 'general' one, 'a state court has even more latitude to reasonably determine' whether a petitioner has satisfied it." *Mathias v. Superintendent Frackville SCI*, No. 14-4694, 2017 WL 5563004, at *10 (3d Cir. Nov. 20, 2017) (precedential) (quoting *Knowles*, 556 U.S. at 123). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court finds that the Appellate Division's decision was not an unreasonable application of *Strickland* and will deny relief on this claim. It will grant a certificate of appealability on the issue, however.

## G. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right as to Grounds One through Five and Seven through Ten. As jurists of reason could not disagree with this Court's resolution of those claims, the Court shall deny Petitioner a certificate of appealability. The Court will grant a certificate of appealability on Ground Six on the issue of whether the Appellate Division unreasonably applied *Strickland* because reasonable jurists could disagree as to the Court's resolution. *See, e.g., Hines v. Ricci*, No. 10-4130, 2013 WL 1285290, at *21 (D.N.J. Mar. 26, 2013) ("An inquiry solely involving whether or not [petitioner] proclaimed innocence, however, is not the correct means by which to address prejudice when assessing a

claim of ineffective assistance of counsel in the plea negotiation process.").

**V.    CONCLUSION**

For the reasons stated above, Grounds One, Two, Three, Four, Five, Six, and Ten are denied with prejudice. Grounds Seven, Eight, and Nine are dismissed as procedurally defaulted.

A certificate of appealability is denied, except on the limited issue of whether the Appellate Division unreasonably applied *Strickland* to Petitioner's Ground Six.

An accompanying Order will be entered.

11/30/17
Date

ANNE E. THOMPSON
U.S. District Judge

34